The opinion of the Court was delivered by
O’Neall, J.
The defendant in the original bill, and the complainant in the cross bill, has at law the right to compel the Sheriff to pay to him the funds in his hands. It is conceded in the decree, on the cross bill, that if he had paid the debt to Eady, for which he was the surety of the complainant in the original bill, and the defendant in the cross bill, that he could not under the facts stated and conceded to be true, be *570 compelled to forego his legal advantage. Indeed it is said by the Chancellor, “ if Bradley had brought Eady into Court as a party,” (I suppose defendant to the cro(ss bill) “ the Court could have compelled him to take a decree against the principal and surety, and perhaps in that case, the Court might have decreed that the fund of Mrs. McKnight, (being by supposition in the hands of Dr. Bradley) be paid over directly to the creditor, to the relief of the surety.” How, after these concessions, the Court can undertake .to deprive the complainant in the cross bill of his legal advantage, I do not perceive. For the principles settled in Taylor vs. Heriot, 4 Des., 227, that a surety may apply to the Court of Equity for relief as soon as he is endangered, is enough to sustain him in the position which he now occupies. He has been guilty of no fraud. The money which bought the executions, and which he set apart for Mrs. McKnight, still,, however, taking the assignments in his own name, was raised on the note of the defendant in the cross bill on which he was her surely. She is conceded to be insolvent, and he will have.,the money to-pay. Ought she not to pay the money arising under the executions in his exoneration ? That would be the very right of the case. For it is precisely the same as if he had, out of his own pocket, advanced the money, and taken the assignments as he did, in his own name; but stating that certain of the executions were to be for her. Would the Court of Equity deprive him of his legal advantage by setting rip the trust? I have no doubt that until he was refunded, no such thing would be done. Here I think the same principle of equity will apply. Mrs. McKnight must do equity before she demands it of Dr. Bradley.
But it is supposed that as he has not paid Eady’s'debt, he cannot be protected. At law, where he would have had to rely on his discount, that would have been a fatal objection, if any action could have been sustained on the part of Mrs. McKnight. But she cannot sustain an action at law. Her whole right depends upon the trust which Dr. Bradley *571 assumed in taking the assignments, and which would have been carried out, had it not been for his position as her surety. He has the power at law by attachment to compel the Sheriff to pay the money to him. That is the same as if it toas in his hands. Will the Court deprive him of this advantage ? I am clear that it ought not. For as surely, he is entitled to the protection of the Court against the wrong which his principal is attempting, by applying the fund to a debt against herself alone, and leaving him to pay the surety debt; a debt contracted to raise the means, by which the purchase of the executions for her was accomplished.
If Dr. Bradley be considered as the agent of Mrs. McKnight, I do not see how that will affect his rights. As her agent, he raised the funds, whereby the executions were bought; but he did not pay for them out of her funds. In the prosecution of the agency, he borrowed the money for himself and her, and he became surety for her part, and she for his part; and it is now ascertained that he must pay for her. Would a Court compel an agent, having still the control of the fund collected under the executions, to turn the same over until he was protected? I apprehend it would not. In Story on Agency, chap. 14, § 352, a lien is defined to be “a right in one man to retain that which is in his possession belonging to another, until certain demands of him, the person in possession, are satisfied.” The rights of Bradley are somewhat analogous to the rights of lien. He has by his credit acquired the very fund now attempted to be taken from him. He has constructively the possession of it, inasmuch as he has the means at law of compelling the payment. In the Bank vs. Levy, 1 McMul., 431, the Court enforced the lien of the agent as a means of securing himself against outstanding liabilities. That case, it seems to me, though on a much larger scale than this, yet presents the very principle, whereby Bradley may be protected. It seems to me on every principle of honesty and fairness, he is entitled to have the benefit of the proceeds of the executions, originally set apart for the benefit of *572 the complainant in the original bill, to discharge the debt to Eady.
It is therefore.ordered and decreed that the Circuit decrees be reversed, and that Dr. Bradley, the defendant in the original bill and the complainant in the cross bill, be allowed to receive the proceeds of the executions originally set apart for Mrs. McKuight, now in the hands of the Sheriff of Williams-burg District, and that he do apply the same forthwith in discharge of the debt to Mr. Eady, mentioned in the pleadings.
JoHNSTON'(a) AND WARDLAW, CC., AND WARDLAW AND Munro, JJ., concurred.
Dunkin and Dargan, CC., dissented.
Withers, J., absent.

Decrees reversed.